## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANK MARSH,** | **Civil Action No. 21-17298 (FLW)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM AND ORDER** |
| **ANTONIO CAMPOS, et al.,** | |
| **Defendants.** | |

This matter has been opened to the Court by two separate motions to dismiss Plaintiff's Amended Complaint brought by Defendant Dr. Ihuoma Nwachukwu ("Dr. Nwachukwu") and Defendants New Jersey Department of Corrections ("NJDOC"), DEPTCOR, and Timothy Maines ("Maines") (collectively "State Defendants"). *See* ECF Nos. 4-5. Plaintiff allegedly fell from the top bunk in his cell and was injured on April 1, 2017, and State Defendants seek dismissal of Plaintiff's New Jersey Tort Claims Act ("NJTCA") claims, as well as purported § 1983 claims, arising from the alleged improper manufacture and assembly of bunk beds at New Jersey State Prison ("NJSP"). Defendant Dr. Nwachukwu seeks dismissal of Plaintiff's § 1983 and New Jersey Civil Rights Act ("NJCRA") claims for alleged inadequate medical care and alleged deliberate indifference to Plaintiff's right to safe transportation in connection with the treatment for Plaintiff's injuries after the fall. *See id.*

### I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### a.  Factual  Background

Plaintiff alleges he fell out of an improperly constructed and/or assembled upper bunk bed while housed at New Jersey State Prison ("NJSP") on April 1, 2017. *See* Amended Complaint ¶¶

1

18-19.  Plaintiff further alleges that the bunk beds are not designed to be stacked on existing bunk beds; however, maintenance staff at NJSP stack the bunk beds, which has resulted in injuries to other inmates, including a death.  *See id.* at ¶ 19.  Plaintiff alleges that Defendants Hoffman and Pilat, who have not been served, improperly assembled the bunk bed and that DEPTCOR,[1] improperly manufactured them.  Amended Complaint at p. 17.

Plaintiff asserts negligence claims under the New Jersey Tort Claims Act ("NJTCA") against the State Defendants and purports to sue each defendant in its/his individual and official capacities.  *See* Amended Complaint at 17 (Negligence Count).

After Plaintiff fell, he was evaluated by the medical department and transported to St. Francis Medical Center for treatment of a "laceration of the forehead left periorbital area." *Id.* at ¶18, 46, Pl Ex. G.

Plaintiff identifies Dr. Nwachukwu as the "head of the medical department" at NJSP and alleges that "[s]he had direct personal involvement and/or had actual knowledge and acquiescence in the wrongs enumerated in th[e] Complaint." *Id.* ¶ 9.  Plaintiff complains of an initial delay in his medical care from April 1, 2017 to June 23, 2017, but does not directly attribute this delay to Dr. Nwachukwu.  *See* Amended Complaint at ¶ 21.

On June 23, 2017, Plaintiff was evaluated by an outside specialist, Dr. Pizzi, and diagnosed with a cervical extension injury" of his neck.  *See id.*  Plaintiff contends that his back pain was not addressed due to Nwachukwu's "negligence." *Id.*

---

[1] Plaintiff's Amended Complaint alleges that DEPTCOR is a private corporation with a contract with the state.  *See* Amended Complaint ¶ 17.  According to the New Jersey Department of Corrections website, "DEPTCOR is New Jersey's correctional industry program.  An entity within the New Jersey Department of Corrections, DEPTCOR provides high quality products and services manufactured and offered by adults incarcerated in New Jersey's correctional system" (Emphasis added).  It would appear, therefore, that DEPTCOR is a state entity.

On October 4, 2017, Plaintiff was treated again by a second neurologist, Dr. Shupper, but Dr. Nwachukwu allegedly failed to follow the neurologist's care plan, which included unspecified medication and treatment. *Id.* at ¶ 22. On November 28, 2017, Plaintiff was again treated at University Hospital and received a steroid injection, but his back pain was not treated. *Id.* at ¶ 23.

On December 27, 2017, Dr. Shupper prescribed a pain medication, Gabapentin, *see id.* at ¶ 55, and stated "NO SUBSTITUTE," but Dr. Nwachukwu ignored the order and allegedly prescribed nothing for pain. *Id.* at ¶ 24. Dr. Shupper also ordered the discontinuation of Tegretol and other similar off-label medications. *Id.* Plaintiff alleges that he was prescribed Tegretol for three years, which has caused Plaintiff to have kidney problems, high blood pressure, and high blood sugar. *id.* at ¶¶ 24, 37. Plaintiff alleges that Dr. Nwachukwu "knew or should have known" that Plaintiff should not have taken Tegretol due to his medical conditions.

Later in the Complaint, Plaintiff alleges that Tegretol, along with Pamelar and Cymbalta, are prescribed to patients for mental illness and seizures, and that medical staff at NJSP under the direction of Dr. Nwachukwu, have prescribed these medications to Plaintiff for pain, and that medical staff have told Plaintiff that these medications "work well" for pain. *Id.* at ¶¶ 37, 38. Plaintiff also alleges that he is provided Ibuprofen "sporadically" for pain. *Id.*

Plaintiff further asserts that dispensing these medications off label for pain violates state regulations. *Id.* Plaintiff alleges that Dr. Nwachukwu has "agenda of ridding the prison of all 'nonformulary' medications that fit in with state-sponsored programs." *Id.* at ¶ 39. The programs are allegedly "state funded" and inmates "enrolled" in the programs "make money for the prison." *Id.*

On March 8, 2018, Plaintiff received another round of steroid injections at the hospital, and upon returning, Plaintiff complained of back pain due to being transported in a kennel-style DOC

3

van.  *Id.* at ¶ 25.  Plaintiff alleges that traveling in the DOC van to his medical appointments is dangerous, and further alleges that Dr. Nwachukwu is responsible for the way inmates are transported to their medical appointments.  *Id.*  According to Plaintiff, Dr. Nwachukwu wrote an order stating that Plaintiff can be transported in a DOC kennel-style van.  *See id.*  On June 20, 2018, a DOC van Plaintiff was traveling in jumped a curb and Plaintiff hit his head on the ceiling of the van, causing pain to his neck and arms.  *Id.* at ¶ 26.

On July 17, 2018, Plaintiff refused to be transported in the DOC van, and medical staff told him to see the medical director to resolve the issue.  *Id.* at ¶ 27.  On July 19, 2018, Plaintiff attempted to see Dr. Nwachukwu, but she was not there.  *Id.*  Plaintiff alleges that the issue was mishandled by medical staff, and his pain management appointment was not rescheduled.  *Id.* at ¶¶ 28-30.  According to Plaintiff, Dr. Nwachukwu is responsible for the management of the medical department and also violated the "Code of Conduct" by not ensuring that grievance procedures are followed, *see id.* at ¶¶ 31-32, and therefore, he is still not receiving proper care four years after his injuries due to the negligence of the medical department.  *See id.* at ¶ 35.  Plaintiff alleges that he is forced to choose between being transported to his medical appointments in the kennel-type DOC van or receiving no treatment for his injuries.  *See id.* ¶ 36.

Plaintiff brings his claims against Defendant Nwachukwu under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA").  Plaintiff's Amended Complaint seeks compensatory and punitive damages for his injuries, as well as a "transportation pass" so he does not have to go to medical appointments in the DOC van.  *See* Amended Complaint at 18.

### b.  Procedural History

#### 1.   The State Court Action and the First Federal Action

This is the second removal action involving these claims; Petitioner's original complaint is dated March 25, 2019, and was initially filed in the Superior Court of New Jersey, Mercer County, Docket No. MER-L-698-19 ("State Court Action") on or about April 15, 2019.  *See* Civ. No. 19-15320, ECF No. 1.  On or about July 12, 2019, Dr. Nwachukwu removed the State Court Action to the U.S. District Court for the District of New Jersey ("First Federal Action").  *See Id.*

Nwachukwu filed a Motion to Dismiss on November 6, 2019, and on March 22, 2020, the Court granted Defendant's Nwachukwu's motion to dismiss.  *Id.* ECF Nos. 13, 39-40.  The Court provided Plaintiff with leave to submit an Amended Complaint, *see id.,* and on August 11, 2020, Plaintiff filed an Amended Complaint.  *See id.*, ECF No. 41.

Subsequently, counsel for Defendant Maines entered an appearance and filed a notice seeking an extension of the time to answer, stating that Maines had been served on August 21, 2020.  *See* ECF No. 43.  On September 8, 2020, Defendant Nwachukwu filed a motion to dismiss the Amended Complaint.  ECF No. 44.  On September 24, 2020, Defendants NJDOC and Maines filed a motion to dismiss the Complaint.  *See* ECF No. 45.

On October 21, 2020, Plaintiff filed opposition to State Defendants' motion to dismiss and included a Notice of Tort claim dated June 29, 2017.  *See* ECF Nos. 51, 51-1.  The Notice identifies NJDOC and Maines, among others, as responsible parties in connection with Plaintiff's April 1, 2017 fall from the bunk bed.  *See id.*

On April 14, 2021, the Court administratively terminated  Defendants' motions to dismiss in the First Federal Action, and gave Plaintiff the opportunity to voluntarily dismiss his federal claims and proceed with his state claims in State court, to which Plaintiff agreed.  *Id.* at ECF No.

56-57.  The Court remanded the First Federal Action to the Superior Court of New Jersey, Law Division, Mercer County by Order dated May 11, 2021.  *Id.* at ECF No. 58.

### 2.  The Amended Complaint and the Second Federal Action

Plaintiff subsequently filed an Amended Complaint in the State Court Action, which is dated August 26, 2021.  *See* Civ. No. 21-17298, ECF No. 1, Notice of Removal, Amended Complaint at 77.  The Amended Complaint refers to Eighth Amendment violations by Dr. Nwachukwu and cites to 42 U.S.C. § 1983.[2]  *See* Amended Complaint at 1, 15.

Thereafter, Dr. Nwachukwu with the consent of Defendant Maines and NJDOC,[3] once again removed the action to federal court.  *See* ECF No. 1, Notice of Removal at ¶ 5.  Both Dr. Nwachukwu and State Defendants received extensions to answer or move to the dismiss the Amended Complaint.  ECF Nos. 2-3.

On October 12, 2021, Nwachukwu and State Defendants separately filed motions to dismiss Plaintiff's Amended Complaint.  ECF Nos. 4-5.  Plaintiff filed an opposition brief on November 19, 2021, ECF No. 8, and Dr. Nwachukwu and State Defendants filed their respective reply briefs.  ECF Nos. 9, 13.  The matter is now fully briefed.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim

---

[2] In his opposition brief, Plaintiff states that he abandoned his § 1983 claims; however, his Amended Complaint clearly refers to § 1983 and the Eighth Amendment in connection to his claims against Defendant Nwachukwu.

[3] It is unclear whether DEPTCOR consented to removal; however, DEPTCOR is represented by the same counsel as Maines and NJDOC and has moved to dismiss the Amended Complaint in this action.

has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).  To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Iqbal*, 556 U.S. at 678.

III.   **ANALYSIS**

a.   **Defendant Nwachukwu's Motion to Dismiss the Amended Complaint**

Dr. Nwachukwu has moved to dismiss Plaintiff's Amended Complaint, which alleges that she acted with deliberate indifference to Plaintiff's serious medical needs in violation of 42 U.S.C. § 1983 and the NJCRA.  The Court considers the § 1983 and NJCRA claims together.[4]

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  Prison officials may not act with deliberate indifference to a prisoner's serious medical needs by denying or delaying medical care. *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  As such, a prisoner's constitutional right to adequate medical care is violated if his serious medical need is met with deliberate indifference from prison officials.  *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir.2003). In order to sustain a constitutional claim, a prisoner must make: 1) an "objective" showing that the prisoner's medical needs were sufficiently serious; and 2) a "subjective" showing that the prison official acted with a sufficiently culpable state of mind.  *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm. *See Giles v. Kearney*, 571 F.3d 318, 330

---

[4] The NJCRA was modeled after § 1983, and courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J.2011); *Chapman v. New Jersey*, Civ. No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart ...."); *Armstrong v. Sherman*, Civ. No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."). Because the § 1983 claims are identical to the NJCRA claims and arise from the same conduct, the Court addresses them together, but the Court otherwise declines supplemental jurisdiction over the state law tort claims, as explained below.

(3d Cir. 2009).  Notably, allegations of medical malpractice or negligence are insufficient to meet that standard, as are "mere disagreements" concerning the proper course of treatment. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

The Third Circuit has concluded that the deliberate indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment." *Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834, F.2d at 346–47; *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)). The Third Circuit has also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. *See Rouse*, 182 F.3d at 197.  "However, '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Bryant v. Kaskie*, 744 F. App'x. 39, 41 (3d Cir. 2018) (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted).

Plaintiff alleges that there was an initial delay in treating his injuries after the fall, but there are no well-pleaded allegations from which the Court can find that this delay is directly attributable to Dr. Nwachukwu or any of the identified Defendants who have not been served.  Plaintiff also alleges in a conclusory manner that his back pain was not treated due to Dr. Nwachukwu's

negligence.  It is clear, however, that a negligent failure to treat Plaintiff's back pain does not rise to the level of a constitutional violation.

Plaintiff's claims that he received no treatment are also contradicted by his own allegations. Plaintiff's Amended Complaint provides detailed facts showing that he was sent repeatedly to outside specialists for treatment and pain management, which included regular epidural cortisone shots.  Plaintiff alleges that Nwachukwu did not give Plaintiff a specific pain medication that the specialist ordered, even though the specialist wrote "NO SUBSTITUTE", and that she provided "nothing" for pain.  But Plaintiff acknowledges that he received steroid cortisone shots for his pain, was prescribed off-label medications for his pain, and received Ibuprofen, albeit sporadically. As such, he was provided treatment for his pain, and the Court is unable to find that the failure to provide him with a specific type of pain medication amounts to deliberate indifference.  Instead it appears to be a disagreement about the type of treatment provided, which is not actionable under § 1983.  As such, Dr. Nwachukwu's motion to dismiss the Eighth Amendment claims premised on the failure to provide Plaintiff with a specific pain medication or sufficient pain medication is granted.

Plaintiff also complains that Dr. Nwachukwu failed to discontinue an off-label medication that had adverse side effects.  This type of claim generally sounds in negligence and does not rise to the level of deliberate indifference.  In *Bryant v. Kaskie*, 744 F. App'x. 39 for example, the Third Circuit upheld the dismissal of a prisoner's complaint where a nurse practitioner failed to warn him about the side effects of Risperidone where prisoner was treated for the side effects and the medication was eventually discontinued at his request.  744 F. App'x. at 42 (explaining that this conduct is insufficient to demonstrate deliberate indifference and further explaining that "[e]ven if this allegation could rise to the level of negligence, simple negligence cannot support an

Eighth Amendment claim." *See id.* (citing *Estelle*, 429 U.S. at 106).  Here, the Amended Complaint similarly alleges that Dr. Nwachukwu failed to discontinue the use of Tegretol and other similar off-label medications, which she knew or "should have known" were causing Plaintiff side effects, such as high blood sugar, high blood pressure, and kidney issues.  Nwachukwu's failure to discontinue the medication likewise appears to sound in state law negligence or medical malpractice, rather than deliberate indifference.  Plaintiff provides no allegations that he was not treated for the side effects of the medication or that Dr. Nwachukwu actually knew (vs. "should have known") that the off-label medication presented a substantial risk of harm to Plaintiff.  As such, the motion to dismiss the deliberate indifference claim based on the failure to discontinue off-label medication is granted.

Plaintiff also claims that Dr. Nwachukwu has an "agenda" to rid the DOC of "nonformulary drugs" and also claims that inmates who participate in certain programs make money for the prison. A "naked assertion" that defendants considered cost in making a medical decision is insufficient to state a claim for a violation of the Eighth Amendment, "as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Services*, 406 F. App'x. 671, 674 (3d Cir. 2011) (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)).  Thus, a conclusory statement that a medical director took an action to cut costs is insufficient to state a claim for liability under the Eighth Amendment. *Id.*  As such, Plaintiff fails to state a claim that he was denied treatment for monetary reasons.

Defendant Nwachukwu also seeks dismissal of Plaintiff's claim that she acted with deliberate indifference with respect to his transportation to and from medical appointments. Plaintiff's alleges that Defendant Nwachukwu is responsible for determining how he will be

transported for medical treatment and issued an order stating that Plaintiff could be transported to University Hospital for evaluation and treatment in a kennel-style van despite her knowledge of his neck and back injuries.  Plaintiff also alleges that on one occasion, the DOC van jumped a curb and he hit his head on the ceiling of the van, sustaining injuries.   These allegations do not plausibly suggest that Dr. Nwachukwu was deliberately indifferent to Plaintiff's serious medical needs.  The fact that the DOC van jumped a curb is attributable to the driver of the van, not Dr. Nwachukwu. And Plaintiff has not provided sufficient facts showing that Dr. Nwachukwu knew there was a serious risk of harm to Plaintiff when she wrote the order stating that he could be transported for treatment in the kennel-style van.  As such, the motion to dismiss is granted as to the transportation claim.

For these reasons, the Court grants Defendant Nwachukwu's motion dismiss for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) as to the § 1983 and NJCRA claims of inadequate medical care and the transportation claim.[5]

**b.  State Defendants' Motion to Dismiss the Amended Complaint**

State Defendants' motion to dismiss is based in part on the seemingly faulty premise that they too have been sued for violations of federal, rather than state, law.  State Defendants argue that Plaintiff's Eighth Amendment claims brought under 42 U.S.C. § 1983 must be dismissed against Defendants NJDOC and DEPTCOR, as well as Defendant Maines to the extent he has been

---

[5] The Court does not construe Plaintiff to assert that Dr. Nwachukwu is liable under § 1983 or the NJCRA for the misconduct by any of her subordinates under a theory of *respondeat superior*, and any such claims would also be subject to dismissal under § 1983 and/or the NJCRA.  The Complaint mentions negligence by Defendant Nwachukwu, but neither Defendant nor Plaintiff argues that the Amended Complaint asserts medical malpractice claims, and the Court does not consider such potential claims in this decision.  In order to assert medical malpractice claims in federal court, Plaintiff also needs to state a viable federal claim under § 1983 or provide some other basis for federal jurisdiction.

sued in his official capacity.  It is well established that a State, agency, or an official of the State acting in his or her official capacity, is not a "person" when sued for damaged under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 (1989).  Nevertheless, a plaintiff may bring a § 1983 claim against a state actor in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The Court has reviewed Plaintiff's Amended Complaint, and there are no allegations that NJDOC, DEPTCOR, or Maines violated Plaintiff's Eighth Amendment rights under 42 U.S.C. § 1983 in connection with Plaintiff's fall.  Instead, the Amended Complaint alleges only negligence claims against these Defendants brought pursuant to the NJTCA.  Because Plaintiff has not sued State Defendants under § 1983, the motion to dismiss the § 1983 claims against NJDOC, DEPTCOR, and Maines in his official capacity is denied.

State Defendants also argue that the Court should dismiss the "individual capacity" claims against Defendant Maine because he was not personally involved in the alleged wrongs and because the allegations against Maines in his personal capacity are conclusory and without sufficient factual support. *See* State Defendants' Brief at 7. State Defendants do not clearly specify whether they are seeking dismissal of the § 1983 or NJTCA claims.  As explained above, the Court construes Plaintiff to assert negligence claims under the NJTCA, not § 1983 claims, against Defendant Maines.  As such, the Court need not address State Defendants' argument that Plaintiff fails to show that Maines was personally involved in the alleged wrongs, as required to state § 1983 claims, and the motion to dismiss for lack of personal involvement is likewise denied.

Finally, State Defendants argue that Plaintiff's § 1983 and NJTCA claims are untimely because Plaintiff's initial Complaint was stamped received by the Superior Court on April 15,

2019, and Plaintiff's injury occurred on April 1, 2017.  Because a § 1983 claim is characterized as a personal-injury claim, such claims are governed by the applicable state's statute of limitations for personal-injury claims.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989).  As noted above, the Court does not construe Plaintiff to assert any constitutional claims against the State Defendants. Because the Court does not construe Plaintiff to assert any federal claims, the Court also denies the motion to dismiss the § 1983 claims on the basis of timeliness.

Having dismissed the only federal claims against Defendant Nwachukwu, the Court declines supplemental jurisdiction over the NJTCA claims against State Defendants.  Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. Where the claims over which the district court had original jurisdiction are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Because there are no such justifications for addressing the pendent state law tort claims here, the Court declines supplemental jurisdiction.

### c.  Plaintiff's Options at this Juncture

At this time, the Court will provide Plaintiff with leave to amend.  If Plaintiff wishes to submit a second amended complaint, he must pick one of the following options.  First, Plaintiff may submit a second amended complaint that deletes all federal constitutional claims under 42

U.S.C. § 1983 and asserts only state law claims.[6]  If Plaintiff elects this option, the Court will *sua sponte* dismiss with prejudice the § 1983 claims against Dr. Nwachukwu, decline supplemental jurisdiction over the state law claims, and remand the matter to state court.[7]  Alternatively, Plaintiff may submit a second amended complaint that attempts to cure the deficiencies in his federal claims, *i.e.*, his Eighth Amendment claims under § 1983 against Defendant Nwachukwu and/or other medical defendants.  If Plaintiff elects this option, he may also reassert his state law claims in the second amended complaint.[8]  If Plaintiff elects this option, the served Defendants shall answer or move to dismiss the second amended complaint in compliance with Fed. R. Civ. P. 12.

Finally, if Plaintiff fails to elect either option within 30 days or declines to submit a second amended complaint, the Court will issue a *sua sponte* Order 1) dismissing the federal claims against Dr. Nwachukwu with prejudice and 2) remanding the matter to state court.

**IT IS, THEREFORE**, on this 26th day of May 2022,

---

[6] If Plaintiff elects this option, he is free to reassert NJCRA claims in his second amended complaint.  Plaintiff may not, however, reference the Eighth Amendment, other federal constitutional provisions, or 42 U.S.C. § 1983, if he intends to proceed solely on state law claims.

[7] If Plaintiff attempts to reassert federal claims again in the State Court Action by referencing § 1983 or the Eighth Amendment in his pleadings, Defendants would be free to remove this matter again to federal court.  If this action is removed again, and Plaintiff fails to state any federal claims in his amended pleading, the Court will dismiss the federal claims with prejudice prior to remanding any state law claims, and the Court may sanction Plaintiff if it appears he is intentionally misleading this Court.

[8] If Plaintiff elects to submit a second amended complaint, he should recognize that "in general, an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity." *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)).  As such, it will become the operative complaint in this matter.

**ORDERED** that the motion to dismiss brought by Defendant Nwachukwu, ECF No. 4, is GRANTED, and the § 1983 and NJCRA claims are dismissed WITHOUT PREJUDICE; and it is further

**ORDERED** that the motion to dismiss by State Defendants, ECF No. 5, is DENIED for the reasons stated in this Memorandum and Order; and it is further

**ORDERED** that the Court declines supplemental jurisdiction over the NJTCA claims against the State Defendants; and it is further

**ORDERED** that Plaintiff may submit a second amended complaint in compliance with this Memorandum and Order within 30 days of his receipt of this Memorandum and Order; and it is further

**ORDERED** if Plaintiff fails to submit a second amended complaint within that timeframe or elects not to do so, the Court will *sua sponte* dismiss with prejudice the § 1983 against Defendant Nwachukwu and remand this matter to state court; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiff at the address on file and ADMINISTRATIVELY TERMINATE this case pending Plaintiff's submission of a second amended complaint or the expiration of the time period to do so.


/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge